# Grove v. School District of Spring Township, Appellant.

*School law—High school—Contract for tuition—Quarter sessions—Jurisdiction—Acts of May 8, 1854, P. L. 617, June 28, 1895, P. L. 413, April 3, 1903, P. L. 153, March 16, 1905, P. L. 40, and May 2, 1907, P. L. 158.*

There is nothing in the Acts of May 8, 1854, P. L. 617, June 6, 1893, P. L. 330, June 28, 1895, P. L. 413, April 3, 1903, P. L. 153, March 16, 1905, P. L. 40, and May 2, 1907, P. L. 158, which confers jurisdiction upon the quarter sessions to compel school directors to enter into a contract with the directors of an adjoining school district for the tuition of pupils in a high school maintained by the latter district.

Argued Oct. 28, 1909. Appeal, No. 78, Oct. T., 1909, by defendant, from order of Q. S. Centre Co., Feb. Sessions, 1908, No. 5-8, making absolute rule on school directors to enter into a contract for the tuition of pupils of a neighboring high school in case of A. C. Grove et al. v. School District of Spring Township. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Rule to show cause why the school directors of Spring township should not make a contract with the school directors of Bellefonte borough for the tuition of pupils resident in Spring township in the high school of the borough. Before ORVIS, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order making absolute rule to enter into a contract.

*Clement Dale*, with him *A. A. Dale*, for appellant.

*J. C. Meyer*, for appellees.

OPINION BY RICE, P. J., July 20, 1910:

Upon the petition of certain citizens and taxpayers of the

township of Spring the court of quarter sessions granted a rule upon the school directors of the township "to show cause why they should not consent to and enter into an arrangement with the school board of Bellefonte borough for the admission of petitioners' children in the schools of the borough of Bellefonte, including the high schools of said borough, at the expense of the district of Spring township school district, and why said directors of Spring township school district should not promptly make settlement with Bellefonte school district for tuition, cost of books, etc., accrued and now due and payable." An answer was filed by the respondents in which they admitted that they had declined to pay for the schooling of certain children at the Bellefonte high school because the respondent district had established a township high school at Pleasant Gap for the education of all advanced pupils in the township of Spring, and placed said school in charge of a competent teacher, a graduate of a chartered college; that should the respondent district agree to educate the children enumerated in the petition at the Bellefonte high school, it would be a precedent for a large number of other children to apply, who live near Bellefonte, and thus destroy the usefulness of their own township high school; that there are but twenty-seven pupils in the high school of Spring township, and that room for double that number could be made, if necessary. After other averments as to the number and location of the schools of the district, the cost of maintaining them, the indebtedness of the district, and the number of pupils attending the schools of the district, as well as of those attending the schools of Bellefonte, for whose education the respondent district was paying, the answer concluded with the averment, "that in establishing the township high school at Pleasant Gap, your respondents took into consideration that there was the largest number of pupils living in and around Pleasant Gap who were ready for the high school training and also that there was a suitable building at Pleasant Gap for the high school; that in establishing the schools of Spring township, as well as the high school, your respondents exercised the wisest discretion possible and that their conclu-

sions are arrived at after mature deliberation." After hearing upon depositions the court made absolute the rule; and from that order this appeal was taken.

It is seen from the above reference to the petition and answer that the action of the court involved a review and setting aside of the discretion of the school directors and the substitution of the court's discretion therefor. The counsel for the appellees, while not denying that a discretion is vested in the school directors with reference to the subject-matter of the petition, contends that it is a reviewable discretion and may be overruled if unreasonably or arbitrarily exercised. But before considering the question whether under the evidence there was a clear abuse of discretion resulting in failure to perform official duty, we deem it important to determine whether the court of quarter sessions had jurisdiction. This question is fairly raised by the fourth and fifth assignments of error. The opinion of the learned judge rests the jurisdiction of the court upon the act of 1854, and it would seem, from the form of the prayer of the petition, that the petitioners sought to enforce performance of the duty imposed by paragraph IX, sec. 23, of the act of May 8, 1854, which provides that "if it shall be found, that on account of great distance from, or difficulty of access to the proper school house in any district, some of the pupils thereof could be more conveniently accomodated in the schools of an adjoining district, it shall be the duty of the directors or controllers of such adjoining districts, to make an arrangement by which such pupils may be instructed in the most convenient school of the adjoining district; and the expense of such instruction shall be paid, as may be agreed upon by the directors or controllers of such adjoining districts, by resolution or agreement entered upon the minutes of the respective boards." Section 9 of the same act provides that if all the members of any board of directors or controllers shall refuse or neglect to perform their duties by levying the tax required by law, and to put or keep the schools in operation so far as the means of the district will admit, "or shall neglect or refuse to perform any other duty enjoined by law," the court of quarter sessions may, upon

complaint in writing and upon due proof, declare their seats vacant and appoint others in their stead until the next annual election for directors. But no statute has been pointed out authorizing the court of quarter sessions to compel, by a direct proceeding, the directors to make a contract with the directors of another district such as was decreed in this case. None is referred to in Young v. School Directors of Pymatuning Township, 14 Pa. D. R. 473, or in Freeman v. School Directors of Franklin Township, 37 Pa. 385. Certainly no such power is given to the court of quarter sessions by the Act of June 28, 1895, P. L. 413, relative to the establishment, classification and maintenance of high schools, or by the Act of April 3, 1903, P. L. 153, relative to the attendance of children of certain districts upon high schools in other districts, or by the Act of March 16, 1905, P. L. 40, permitting children residing in school districts in which no public high school is maintained to attend the high school in some other district located near their homes and providing for the payment of cost of tuition and schoolbooks, or by the Act of May 2, 1907, P. L. 158, to permit children who reside one and one-half miles or more from the nearest school in the district where they reside to attend any more convenient school in any other district. These are all of the acts that are referred to in the briefs of counsel, and, as we said, none of them authorizes the court of quarter sessions to coerce school directors into entering into such a contract as is contemplated by the petition.. The act of 1854, as has been seen, gives the court power, under certain circumstances, to remove the directors, and the same power is given, under other circumstances, by the Acts of June 6, 1893, P. L. 330 and 339. But this power manifestly does not include the power here claimed, and it is needless to say that it is not included in the general jurisdiction of the court of quarter sessions. We have deemed it important to go into this question, because by reviewing the case on the merits we would seem to be establishing a precedent unwarranted by law.

The order is reversed and the whole proceedings are dismissed, at the costs of the petitioners.